JC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Bektur Nuraliev,

Petitioner,

v.

Pamela Bondi, et al.,

Respondents.

No. CV-26-00077-PHX-DJH (MTM)

**ORDER**

Petitioner Bektur Nuraliev, who is represented by counsel, has filed this habeas corpus action under 28 U.S.C. § 2241 challenging his immigration detention. Pending before the Court is Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 7). Respondents filed a Response (Doc. 12), to which Petitioner replied (Doc. 16). For the reasons below, the Court will grant the Second Amended Petition, order that Petitioner be released from custody, and enjoin Respondents from re-detaining him without first affording him a hearing.

**I. Background**

On November 12, 2023, Petitioner entered the United States on foot near Tecate, California and was apprehended by the Department of Homeland Security ("DHS"). (Doc. 7 ¶ 20; Doc. 7-3 at 1; Doc. 7-4 at 1.) On November 20, 2023, DHS issued Petitioner an Order of Release on Recognizance under 8 U.S.C. § 1226 and a Notice of Custody Determination reflecting that he was released on his own recognizance. (Doc. 7 ¶ 21.) On February 20, 2024, DHS filed a Notice to Appear with the Immigration Court, commencing

removal proceedings under 8 U.S.C. § 1229a. (Doc. 7-1 at 1.)

During the approximately seventeen months between Petitioner's November 2023 release and May 2025 detention, Petitioner filed two EOIR-33 forms reporting changes of address, applied for asylum, obtained an Employment Authorization Document valid from June 17, 2024 through June 16, 2029, worked as a delivery driver, filed a 2024 federal income tax return reporting $50,705 in gross receipts, registered with the Selective Service System, and obtained a United States citizen sponsor who submitted a sworn affidavit. (Doc. 7 ¶¶ 22-25.) Petitioner has no known criminal history. (Doc. 7-4 at 1.)

On May 2, 2025, a Border Patrol agent encountered Petitioner in the Yuma, Arizona area while responding to another agency's call. (Doc. 7-4 at 3.) The Form I-213 states that "[p]er new guidance, any alien awaiting a future court date is to be taken into custody." (*Id.*) Petitioner was arrested, transported to the Yuma Station, and transferred to the Eloy Detention Center, where he remains. (*Id.*)

On July 7, 2025, Petitioner requested a custody redetermination. (Doc. 7 ¶ 28.) On July 11, 2025, an Immigration Judge ["IJ"] held a hearing. (Doc. 7-1 at 2.) The resulting Order of the IJ, dated July 10, 2025, is a one-page pre-printed form. (Doc. 7-2 at 1.) After the pre-printed words "Denied, because," the form states two grounds. The first is that "[t]he court lacks jurisdiction under INA § 235(b)(2)(A)." (*Id.*) The second is that "[a]lternatively, the Court finds that the respondent has failed to meet his burden of proving he is not a flight risk if released on bond[.]" (*Id.*) The form identifies no evidence and states no other reason. DHS waived appeal, and Petitioner reserved it. (*Id.* at 2.)

Petitioner appealed to the Board of Immigration Appeals ("BIA") on August 10, 2025. (Doc. 7 ¶ 33.) On August 20, 2025, the IJ issued a three-page Memorandum Decision to facilitate the BIA's review. (Doc. 7-1 at 1-3.) The Memorandum Decision addresses jurisdiction only. Relying on *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), it concludes that Petitioner is an applicant for admission who did not affect an entry, that he is therefore detained under 8 U.S.C. § 1225(b)(2)(A), and that the Immigration Court lacks jurisdiction to consider bond. (Doc. 7-1 at 2-3.) It does not mention flight risk, the evidence Petitioner

submitted, or the factors set out in *Matter of Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006). The BIA has not ruled on the appeal. (Doc. 16 at 5.)

Petitioner filed this action on January 7, 2026 (Doc. 1) and filed a First Amended Petition (Doc. 4) on January 8, 2026. The Court dismissed the First Amended Petition with leave to amend on March 17, 2026, directing Petitioner to allege additional facts supporting his claim that the July 10, 2025 hearing employed the wrong standard of review or otherwise violated due process. (Doc. 6 at 4.) Petitioner filed the Second Amended Petition (Doc. 7) on March 25, 2026. Respondents responded on April 28, 2026 (Doc. 12), and Petitioner replied on April 29, 2026 (Doc. 16). On May 28, 2026, Petitioner filed a Notice of Supplemental Authority (Doc. 17).

## II. Discussion

### A. Applicable Detention Statute

The Immigration and Nationality Act ("INA") supplies several statutes authorizing the detention of aliens placed in removal proceedings, including 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Respondents contend that Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A), relying on the entry fiction doctrine and on the principle that "an alien who is detained shortly after unlawful entry cannot be said to have effected an entry." (Doc. 12 at 8 (quoting *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020)).) The IJ accepted that reasoning. (Doc. 7-1 at 2-3.) The Ninth Circuit has since rejected it, holding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, --- F.4th ----, 2026 WL 2196424, at *3 (9th

Cir. July 30, 2026).[1] Other courts of appeals have reached the same conclusion. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026).

Respondents oddly assert that Petitioner "was apprehended shortly within 100 yards of the Mexican Border and approximately seven miles east of Tecate, California," and that he "had been present for a matter of hours or perhaps minutes at the time of his inspection." (Doc. 12 at 8.) However, the record shows that Petitioner entered the United States on November 12, 2023 and that the arrest at issue in this case occurred on May 2, 2025 in the Yuma, Arizona area. (Doc. 7-3 at 1; Doc. 7-4 at 1, 3.) Nothing in the Form I-213 places Petitioner within 100 yards of the border, and the encounter Respondents describe is not the one that produced his current detention. DHS released Petitioner eight days after he entered, placed him in removal proceedings under 8 U.S.C. § 1229a, issued a Notice of Custody Determination, and released him on his own recognizance—under the mechanics of 8 U.S.C. § 1226(a). *See* 8 C.F.R. § 236.1(c), (d). He then lived in the United States under conditions of release for approximately seventeen months. (Doc. 7 ¶¶ 21-27.) The Court finds that Petitioner is detained under 8 U.S.C. § 1226(a).

**B. Jurisdiction**

District courts have jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are "sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020). Although 8 U.S.C. § 1226(e) limits judicial review of the Attorney General's discretionary judgment regarding the detention and release of an alien, it does not "preclude habeas jurisdiction over constitutional claims or questions of law," and "[c]laims that the discretionary [bond] process itself was constitutionally flawed are cognizable in federal court on habeas because

[1] The mandate in *Rodriguez Vazquez* has not yet issued. *See* Fed. R. App. P. 41(b). However, the Ninth Circuit has "unequivocally stated that a published decision constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so." *In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017). In any event, as explained below, the record independently establishes that Petitioner is detained under 8 U.S.C. § 1226(a).

they fit comfortably within the scope of § 2241." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)).

The Court therefore "has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, No. 18-cv-04800, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) (explaining that although the IJ's discretionary bond determination was not reviewable in federal court, *see* 8 U.S.C. § 1226(e), the court has "jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [the petitioner's] agency proceedings, including any claimed due process violation"); *Benipal v. Rokosky*, No. CV-26-01306-PHX-RM (CDB), 2026 WL 1355010, at *6 (D. Ariz. Apr. 23, 2026) (claims challenging the procedural adequacy of a bond hearing are reviewable), *report and recommendation adopted*, 2026 WL 1352061 (D. Ariz. May 14, 2026).

Jurisdiction, however, is not the end of the inquiry. An alien who wishes to challenge an IJ's custody determination must first appeal that determination to the BIA. When a petitioner has not done so, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011); *see also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (requiring exhaustion of constitutional claims that the BIA can review on appeal).

### C. Exhaustion of Administrative Remedies Is Excused

"The doctrine [of exhaustion] provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States*, 395 U.S. 185, 193 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). In other words, an exhaustion requirement "means using all steps that [an] agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis omitted).

"Administrative exhaustion can be either statutorily required or judicially imposed as a matter of prudence." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Here, Petitioner seeks habeas relief under 28 U.S.C. § 2241, which does not explicitly require administrative exhaustion. However, the "Ninth Circuit requires prudential exhaustion in habeas challenges to decisions by IJs, including bond determinations." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citing *Leonardo*, 646 F.3d at 1160; *Sun v. Ashcroft*, 370 F.3d 932, 935 (9th Cir. 2004); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018)). Exhaustion is required "because agency expertise is often needed to generate a proper administrative record, because relaxing exhaustion would only encourage detainees to deliberately bypass available administrative remedies, and because administrative review can often correct the errors alleged—eliminating any need for federal habeas review." *Fan v. Bondi*, No. 5:25-cv-3619-SK, --- F. Supp. 3d ----, 2026 WL 2276462, at *9 (C.D. Cal. Aug. 6, 2026) (citing *Puga*, 488 F.3d at 815).

Here, Petitioner timely appealed the July 10, 2025 custody determination to the BIA. (Doc. 7 ¶ 33; Doc. 7-2 at 2.) The BIA has not ruled. Because the BIA has not addressed the claim, it is not exhausted.

A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (quoting *Aden*, 2019 WL 5802013, at *2).

This case is distinguishable from the authority Respondents cite. Respondents rely on decisions requiring a detainee to present his custody challenge to the BIA before seeking habeas review, and they assert that excusing exhaustion would encourage detainees to

bypass the BIA. (Doc. 12 at 2; citing *Leonardo*, 646 F.3d at 1159-60; *Sharma v. Archembrault*, No. 26-cv-513-BAS-SBC, 2026 WL 381611, at *2 (S.D. Cal. Feb. 11, 2026); *Aden*, 2019 WL 5802013, at *2.) However, as explained below, the Court finds that Petitioner has shown that two of the *Laing* factors are satisfied.

The first factor is futility. Recourse to the BIA is futile where "the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be." *Hernandez*, 872 F.3d at 989 (cleaned up). As Petitioner notes (Doc. 16 at 3-4), the BIA has held that aliens in Petitioner's circumstances are applicants for admission subject to detention under 8 U.S.C. § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). The IJ relied on *Matter of Q. Li,* 29 I. & N. Dec. 66 (B.I.A. 2025), to reach the same conclusion. (Doc. 7-1 at 2-3.) The BIA's position on the question Petitioner's appeal presents is therefore set by its own published precedent. Petitioner has established futility.

The second factor asks whether administrative remedies are "inadequate or not efficacious." *Laing*, 370 F.3d at 1000 (quoting *SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)). Petitioner's bond appeal has been pending without action since August 10, 2025. Delay alone does not make an administrative remedy inadequate. Here, however, Petitioner remains detained while he waits, his appeal presents a legal question rather than a challenge to factual findings, and the IJ made no individualized findings for the BIA to review. On this record, an appeal that has produced no decision in more than twelve months offers no genuine opportunity for adequate relief. *See Ortega-Rangel*, 313 F. Supp. 3d at 1003 (excusing exhaustion where the petitioner's bond appeal was pending and undecided). Petitioner has established this ground as well.

Petitioner separately asserts that his continued detention is itself irreparable injury. (Doc. 16 at 5.) He does not develop the assertion with any case-specific showing beyond the fact and length of his detention. The Court need not decide whether it would independently excuse exhaustion, as one *Laing* ground suffices, and Petitioner has established two. The Court excuses prudential exhaustion in this matter.

### D. The July 10, 2025 IJ's Custody Determination Did Not Comport With Due Process

An alien detained under 8 U.S.C. § 1226(a) is entitled to an individualized custody redetermination before an IJ. At that hearing the IJ considers whether the detainee has shown that he is not a danger to the community and is not a flight risk, weighing the factors identified in *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006), which include the detainee's fixed address, length of residence, family and community ties, employment history, record of appearance in court, criminal record, and immigration history. Freedom from physical restraint is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion).

Here, the IJ concluded that the Immigration Court lacked jurisdiction to release Petitioner on bond after finding that Petitioner was subject to mandatory detention under INA § 235(b)(2)(A), codified at 8 U.S.C. § 1225(b)(2)(A). (Doc. 7-2 at 1; Doc. 7-1 at 2-3.) For the reasons explained in Section II(A), that conclusion was legal error. The hearing thus became a jurisdictional exercise rather than the individualized assessment 8 U.S.C. § 1226(a) contemplates.

Moreover, the IJ's alternative flight-risk finding did not provide the individualized assessment that 8 U.S.C. § 1226(a) requires. The initial ruling consists of one sentence on a pre-printed form (Doc. 7-2 at 1) and the subsequent Memorandum Decision (Doc. 7-1 at 1-3) does not discuss flight risk at all. A custody determination that states no reasons and engages with no evidence does not comport with due process. *See Singh*, 638 F.3d at 1208-09 (due process requires a contemporaneous record of bond hearings so that the basis for the Immigration Judge's decision can be meaningfully reviewed); *Benipal*, 2026 WL 1355010, at *7-9 (one-line form order denying bond without findings did not satisfy due process); *Soto Gimenez v. Hernandez*, No. 2:26-cv-00966-GJL, 2026 WL 1156075, at *7-8 (W.D. Wash. Apr. 29, 2026) (same); *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6-7 (S.D. Cal. Apr. 16, 2026) (same).

The Court finds that the IJ's July 10, 2025 custody determination did not comport with due process.

**E. The Government Revoked a Protected Liberty Interest Without Pre-Deprivation Process and Asserting its Entry Fiction Argument**

A separate and independent violation preceded the hearing. An alien released from immigration custody acquires a protected liberty interest in remaining at liberty. "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *see also R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1101-03 (E.D. Cal. 2026). Freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

DHS granted Petitioner that liberty. On November 20, 2023, it released him on his own recognizance under 8 U.S.C. § 1226 and issued a Notice of Custody Determination recording the release. (Doc. 7 ¶ 21.) An alien released on his own recognizance is released under 8 U.S.C. § 1226(a). *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007). A release under that authority reflects a determination that the alien is not a danger to the community and is likely to appear for further proceedings. 8 C.F.R. § 236.1(c)(8). DHS itself therefore determined in November 2023 that Petitioner was neither a danger nor a flight risk. He then lived openly in the community for seventeen months, in compliance with the conditions of that release.

"[T]he root requirement of the Due Process Clause" is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). Courts tolerate post-deprivation process only in extraordinary situations, where urgent concerns or an especially strong governmental interest justify postponing the hearing. *United States v. James Daniel Good Real Property*,

510 U.S. 43, 53 (1993); *R.A.N.O.*, 820 F. Supp. 3d at 1105-06.

No extraordinary circumstances are present. Respondents do not contend that exigency justified re-detaining Petitioner without process. They do not allege that Petitioner absconded, violated a condition of his release, failed to appear, failed to report, or engaged in criminal conduct, and they identify no change in circumstances between the November 2023 release and the May 2025 arrest. Petitioner was encountered incidentally, while an agent was responding to another agency's call. (Doc. 7-4 at 3.) The Form I-213 supplies the reason for the arrest, and it is not individualized: "Per new guidance, *any* alien awaiting a future court date is to be taken into custody." (*Id.*)(emphasis added.) Due process required a hearing before the Government revoked Petitioner's liberty, and Petitioner received none.

This conclusion does not depend on which statute authorizes Petitioner's detention. Even if 8 U.S.C. § 1225(b)(2)(A) governed, due process would independently entitle Petitioner to a hearing before the Government revoked a liberty it had granted. Respondents resist that conclusion through the entry fiction. They argue that because Petitioner is treated as though he never entered the United States, he has no procedural due process rights to invoke and is entitled only to the process Congress provides. (Doc. 12 at 7-9; citing *Thuraissigiam*, 591 U.S. at 139-40.) The fiction cannot bear that weight. "The proper use of legal fiction is to prevent injustice[.]" *Union Refrigerator Transit Co. v. Kentucky*, 199 U.S. 194, 208 (1905). A court in this District recently rejected the entry fiction as a bar to a detention-based due process claim, distinguishing a challenge to admissibility from a challenge to detention. *Khasanova v. Rokosky*, No. CV-26-00763-PHX-JCH (JFM), 2026 WL 1815723, at *3-5 (D. Ariz. June 24, 2026). "Pretending that Petitioner never entered the United States not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." *Rincon v. Hyde*, 810 F. Supp. 3d 101, 106 (D. Mass. 2025) (citing U.S. Const. amend. V); *see also R.A.N.O.*, 820 F. Supp. 3d at 1100-01.

**F. Remedy – Restore the Status Quo**

Two grounds support relief. The statutory ground establishes that Petitioner is entitled to a meaningful custody determination under 8 U.S.C. § 1226(a). The constitutional ground in Section II(E) establishes that he was entitled to one before he was taken into custody, and it therefore governs the remedy. "A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation." *Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025).

Where the Government has revoked a protected liberty interest without the pre-deprivation process due, the remedy is to restore the status quo and to require that process before the deprivation may be repeated. *R.A.N.O.*, 820 F. Supp. 3d at 1106; *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release."). Courts have ordered release on similar facts. *See, e.g.*, *Nodarse Pereira v. Warden, Mesa Verde Det. Ctr.*, No. 26-cv-03678-KES-EGC (HC), 2026 WL 2268761, at *2 (E.D. Cal. Aug. 6, 2026) (ordering immediate release and enjoining re-detention absent proof, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that the petitioner is a flight risk or a danger to the community); *Dzhuraev v. Bondi*, No. 2:26-cv-00438-SHD-JZB, Doc. 6 (D. Ariz. Mar. 17, 2026); *Valera v. Baltazar*, No. 1:25-cv-03744-CNS, 2025 WL 3496174, at *3-4 (D. Colo. Dec. 5, 2025). Petitioner requests precisely that relief: release "under the same conditions that existed before his re-detention on May 2, 2025." (Doc. 7 at 21.)

The Court will therefore order Petitioner released and will enjoin Respondents from re-detaining him in connection with his pending immigration proceedings unless they first establish, by clear and convincing evidence at a hearing before a neutral decisionmaker, that his detention is justified because he is a flight risk or a danger to the community. Both components lie within this Court's authority to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. The injunction is narrow, and it is necessary to keep Petitioner's release from being rendered meaningless. Relief of that kind falls within the core of habeas. *See Mohd v. Noem*, 824 F. Supp. 3d 275, 283 (E.D.N.Y. 2026); *Thuraissigiam*, 591 U.S.

at 119.[2]

Therefore,

**IT IS ORDERED** that Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 7) is **granted**.

**IT IS FURTHER ORDERED** that Respondents must **release Petitioner from custody immediately,** under the conditions of release that existed before his re-detention on May 2, 2025.

**IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner in connection with his pending immigration proceedings unless they first establish, by clear and convincing evidence at a hearing before a neutral decisionmaker, that Petitioner is a flight risk or a danger to the community.

**IT IS FURTHER ORDERED** that Respondents must file a notice of compliance within **two business days** of Petitioner's release.

. . . .

. . . .

. . . .

. . . .

---

[2] Respondents argue that this Court lacks authority to alter the allocation of the burden of proof in a bond proceeding under 8 U.S.C. § 1226(a). (Doc. 12 at 5-6.) This argument addresses a different proceeding. An alien seeking an *initial* custody redetermination under 8 U.S.C. § 1226(a) bears the burden, 8 C.F.R. § 1236.1(c)(8); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006), and the Ninth Circuit has held that this allocation satisfies due process at an initial custody determination, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211-14 (9th Cir. 2022).

This Order addresses the Government's revocation of a grant of conditional liberty it already made. "[W]hen a noncitizen has previously been released following a determination that he is not a flight risk or danger to the community, and then is subsequently re-detained, due process requires a bond hearing at which *the government bears the burden* of proving that the noncitizen is a flight risk or danger to the community by clear and convincing evidence." *Nodarse Pereira*, 2026 WL 2268761, at *1 (collecting cases)(emphasis added). "Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *15 (E.D. Cal. Oct. 9, 2025). *Rodriguez Diaz* "did not address the circumstance . . . of a noncitizen who was previously released from detention pursuant to § 1226(a) and then subsequently re-detained," *Nodarse Pereira*, 2026 WL 2268761, at *2 n.1, and it expressly did "not foreclose all as-applied challenges to § 1226(a)'s procedures," *Rodriguez Diaz*, 53 F.4th at 1213.

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly and close this case.

Dated this 31st day of August, 2026.

Honorable Diane J. Humetewa
United States District Judge